Good morning, Your Honor. May it please the Court, Robert Grosbeck and my co-counsel, Mary Grosbeck, occurring this morning on behalf of Appellant Plaintiff Stephen Lewis Powell. Please, would you keep your voice up, please, because the microphone doesn't amplify. Thank you, Your Honor. I'll do my best. Your Honor, you've got several issues, Your Honors, rather, you've got several issues before you this morning. And absent the Court's directive, what I'd like to do is I'll address the spoliation issue. It's my understanding we have 20 minutes total allotted each side. We'd like to reserve five minutes, if we may, for rebuttal. Go ahead and keep track of your own time. Thank you, we will. And what I'd like to do with the Court's permission is I'll address the spoliation issue initially with regard to IBP. My co-counsel, Ms. Grosbeck, will address the removal or remand of the summary judgment entered in favor of IBP, as well as the dismissal of Royal Express and DEF, as well as the respective defaults. Your Honor, Your Honors, there's been plenty of briefing, or no lack of, or a shortage of briefing, rather, on these issues. But I think with respect to the spoliation, a couple points that I think need to be addressed in detail here again in argument. The incident matter arises out of a very significant automobile accident, or semi-tractor trailer accident in February of 2001 in Las Vegas, Nevada. There are a number of issues here, but the crux, I believe, of Appellant's issue, and I believe the issue before the District Court was that we cannot establish a nexus with respect to any fault as to IBP. As the Court is aware, as we've indicated in our opening briefs, the issue with respect to spoliation as to defendant Royal Express is not before the Court, because that matter was dismissed while that motion was pending. So the only issue here is, in that relation, that pertains to IBP. Now, IBP's position is fairly succinct before this Court, as it was before the District Court, and basically they're arguing that they had no control over the tractor or trailer. And it's our position, as we've indicated in the papers, that's simply inconsistent with the law, and it's certainly inconsistent with the inherent powers of this Court under NRCP or FRCP 37. What we do know from the record is, after this accident where Stephen suffered very, very serious personal injuries, and while he was laboring with a spinal cord injury in the hospital, a great deal of activity was occurring between the insurance companies, IBP and Royal Express. And, in fact, as indicated in the record, as recent or as soon as eight days after the accident, insurance company representatives were making contact with the storage yard. What the record also shows is that within just a very few months, the tractor and trailer were destroyed. Now, IBP wants everyone to believe, because they didn't have control, they can't be held accountable. And it's our position that that argument is contrary to this Court's inherent powers, and contrary to case law in the State Court as well as in this District. What we do know is IBP, through its agent, the carrier, had direct communications regarding not only the accident, but made a formal request for the accident report and the destruction or disposal of the contents of the report. And that kind of begs the question, if they weren't interested in a potential for liability, whether they knew or should have known that there was a reasonable likelihood of litigation, why would they ask for the accident report? Well, counsel, it seems perfectly reasonable to me that they would ask for the accident report, because they may have a claim against Royal Express. But I don't understand how we can hold them liable for Royal Express destroying what was Royal Express's. Why are we here arguing with IBP? What should IBP have done here? Well, what they should have done is very clear, what most large safety departments do. When you have severe injuries or death, you instruct your safety departments to impound the evidence. And that would include not only the tractor and trailer, but everything else, the meat hooks, the railing system, to determine whether there was a defect. It's not just the tractor. Bear in mind here a defense proffered by IBP and a defense that the District Court found persuasive in light of its denial of the motion and ultimately granting summary judgment was that speed is the overwhelming issue here. Their position has been all along that he was speeding. Now, they've cited to some purported undisputed facts. We obviously dispute those facts. But in reality, had they taken the simple act of instructing the storage yard and or Royal Express, their hauler, to preserve the evidence, we wouldn't be here today. Because the ECM, the black box, would have told us definitively what the speed was. It was destroyed. They had a Qualcomm system, a satellite system on board. All that data was destroyed. That, too. By the time the evidence was destroyed, was Royal Express prepared to pay for the damaged goods? I don't know if they were prepared at that point. That was certainly a contractual issue that will be before you this morning. There's no question that at some point IBP wanted to be paid for their load. And they were paid. Right. Now, but that's separate and aside. See, because what they're doing is they're riding the coattails of the spoliator and they're arguing that, well, we couldn't have had control over it when they had actual knowledge of the existence. We wouldn't have this argument if they had been a components part manufacturer and we'd gone two years down the road and then said, oh, by the way, we've got a lining brake defect issue. We probably also wouldn't have this issue, counsel, if Royal Express had thought that the load had shifted. Well, Your Honor, I don't know if that's the case, but what we do know is we had a very seriously injured person sitting in a hospital and we had very inconsistent statements regarding what happened. And at a minimum, I think the Ninth Circuit's been pretty clear, as has the Nevada State Court, that the duty is incumbent upon the defendant in this case to preserve that evidence so those determinations can be properly put before the court and fleshed out in discovery. That didn't happen here. And IBP simply gets to ride the coattail of Royal Express, who also is not accountable at this point, because they argue that their exclusive remedy or their only liability is pursuant to the workers' comp provisions. And I'm suggesting, Your Honor, that's inherently unfair. And I don't believe the cases, although they may not address this issue specifically, it's inherently unfair that IBP is allowed to benefit through the destructive acts of the spoliator, in this case Royal Express, or DEF. And bear in mind, there's some question as to what DEF's role was here, but we do see in the record the DEF actually made the request to the auto dismantler to have the evidence shredded. And we think that IBP should be held to the same standard as Royal Express, who no question here was the spoliator. And if there are no other questions, I'll refer to my co-counsel. Good morning. The first issue I'd like to address is one that you just heard on the case preceding this, and that's the removal and the remand. This case differs from that one in that we had prior served defendants. As you're aware, the issue of removal and remand are reviewed de novo. The other issue important here is that original jurisdiction is required in order to remove, and it is subject matter jurisdiction which cannot be waived, consented to, and certainly not impliedly waived. The defendants are arguing that the removal did was first off timely, which we're objecting to under the first served rule. They're then claiming that it was proper because there was subject matter jurisdiction, and we disagree with that under the 11th Amendment. And they're arguing that there's no complete diversity when the State of Nevada and a Nevada corporation at the time were involved. They were parties and had been served. Previously served parties did not consent to or join in the removal, and one of the parties refused to recognize the removal and continued to litigate in state court. So at the time of the removal and at the time of the briefing, the majority of the opinions in the federal court were that the first served rule was proper, and since then, as recently as the fall of this year, some courts have started to lean toward later served rule. We understand that, but of course we have to look at the case as it existed at the time of the removal. The next issue would be defaults. We have two parties who refuse to file answers. We have a Nevada rule that says that if you have an out-of-state plan, if you can demand security, you have a certain amount of time to demand the security, or you don't have to answer. We produce the security. But they're now saying that a motion under NRS 18.130 stays the time to answer. And that's where our dispute lies there. We're saying it's not a 12B motion. NRCP 12B, FRCP 12B, we have one of these motions filed in state court, one filed in federal court at the same time under the identical rules. They're claiming that these motions stay. 12B, of course, says that it stays your time to answer. We went back and forth. We gave them three days' notice. We told them, yes, we're going to default you. They did not answer. We defaulted them. They went in and got those set aside. We maintained that their answers were untimely and the defaults were valid and should be upheld. Next we have the dismissal of DEF. DEF was named in the police report and in the DMV records as the registered owner of the vehicle. It was named as an Oklahoma company. We sued them as an Oklahoma company. Had we sued them as a California company, of course, they would have come in and said, hey, we don't own the vehicle, you have to dismiss us. So we sued them as an Oklahoma company, attempted to serve them in Oklahoma, where the Oklahoma people told us, no, go serve us in California, which we did. They then appeared. They're now claiming they're a sister corporation to the employer Royal Express. There's no evidence of that. This court said in 1966 in the Noble case, when a company finds benefit through separate corporations, it must then accept the liabilities as well as the benefits, and that's our position here. They took whatever benefits they, for whatever reason, they had an Oklahoma company own the vehicle driven by a Washington employee of a California employer on the streets of Nevada, and in doing that, it was their decision, they're now bound by those liabilities. And that has given us certainly diversity. It's also made them liable. When the employer is not the owner of the vehicle, and you're suing an employer and the owner of the vehicle, they both then can't claim to be the employer. And they can't just claim to be sister corporations with no evidence of that. So we submit that the motion to dismiss DEF on the grounds that they're a sister corporation of the employer is wrong. It's reversible error. The dismissal of Royal Express as the employer we also believe was reversible. How did you preserve your position with respect to DEF? What does the record show? Preserve our position? Yeah, what does the record show as to what objection was made to? We filed an opposition to the motion to dismiss. We argued at the hearing on it. And you took the position, what was your position? Our position was that DEF was trying to rely on the exclusive remedy of workers' comp when they were not Stephen's employer. They were the owner of the vehicle. Royal Express was his employer. And they took the position that we're Royal Express's sister corporation, and therefore we should all get out on exclusive remedy of workers' comp. And our position was only we don't believe workers' comp is the exclusive remedy here, but it would only apply to the employer, not to a separate company who is in another state who is the registered owner of the vehicle. Does that answer your question? Well, one of them had to go out. Which one are you saying should be removed? Under workers' comp? We're saying that nobody goes out under workers' comp, but the one we're agreeing is the employer is Royal Express. And it's pay him and control him and supervise him. That is his employer. He had no idea the DEF existed until the litigation. Now, as far as the workers' comp, there are two ways that workers' comp can be an exclusive remedy in this matter, and that is, if  we submit that California is not the exclusive remedy for litigation in Nevada, California's workers' comp statutes provide that workers' compensation is a plaintiff's exclusive remedy for all actions brought in California. This is an action brought in Nevada. So what is your authority for that? The statute itself. Are there any cases interpreting the statute? No, no. There aren't. Actually, we looked. The statute says that you are barred from separate relief in all actions brought in California. This action couldn't be brought in California. Not that we've found. The other problem we have... What does that indicate to you? Well, I take it it indicates to you that it's implied. But when you read the Nevada statute, the Nevada statute says that you are barred from bringing an action outside of workers' comp, if the other state recognizes that you are barred from bringing an action outside of workers' comp, Nevada, as in its extraterritorial provisions, and if a Nevada plaintiff in a reverse situation would be covered in Nevada, and they wouldn't. The extraterritorial provisions of the California statute do not cover Nevada residents. And if the roles were reversed and a Washington resident was insured in Nevada and injured in California, that would be California. California would not bar recovery. So we think a strict we think that the Nevada legislature wrote this on a reciprocity theory. We will pay for the injuries that occur in our state if you will pay for the injuries that occur in your state. And in California, there is no reciprocity under that. And so California does not, I mean, Nevada does not bar this claim. The other exceptions are that it's outside the compensation bargain. Stephen did not bargain to drive swinging beef that he was not allowed to inspect. The truck was locked. He was not allowed to look at that load. And a second exception is if you're not a resident or employer in California, we don't have a resident, you know, an employee in California, and if there's no adequate remedy under the California workers' comp system. Now, the California workers' comp has gone into bankruptcy receivership, and there is no adequate remedy. Yes, I would. Thank you. Okay. Who's up first? James Wilson, Your Honor. We're going to split our time up. I'll take part of the time addressing the issues in regard to IBP from Plaintiff's Appeal. My partner, Mr. Federico, on the other side of the table, will address the issues on the appeal of the indemnity judgment in favor of IBP against Royal, and then Mr. Lozano will represent or argue the position of Royal on those issues of appeal, both in the indemnity and the appeal of Plaintiff against the dismissal. Let me start off with the spoliation issue. You will see from the briefs and also from counsel's argument not one case is decided or can be, the court can be directed to, to say that an entity or a person spoliates evidence that they have no control over or no right to control. That is the basis of any claim of spoliation. And it's undeniable that the items the plaintiff is saying were spoliated belong to Royal Express and not to IBP. The whole issue that counsel brought up was the claim process that IBP had against Royal, because Royal had admitted that their driver was at fault and ruined 40,000 pounds of cargo they were shipping on behalf of IBP. And that claim was paid. That's all there was in regard to getting those documents in the beginning and making the claim. That was paid by Royal. Counsel claims that somehow this spoliated evidence is relevant because of speed. That's not what the district court based the summary judgment on. I know we seem to be going in circles, but that was their argument on spoliation. Well, this was relevant to speed. Speed was not relevant to the motion for summary judgment. What was relevant to the motion for summary judgment is plaintiff could not provide one bit of evidence that their claim that the beef shifted, the load somehow was negligent, it was loaded negligently, it shifted unreasonably and caused the accident. They had no evidence. Despite several years of litigation, depositions, experts, they had absolutely no evidence. And in fact, their own expert had no evidence that the beef was not loaded properly or that there was any shift in the load. And probably the best proof that there was no shift was the plaintiff himself, who stated after the accident to the police officers investigating the accident that the load didn't shift. That's it. So this whole idea of spoliation and speed is an absolute red herring. In regard to the remand removal, when we removed this case, we had no knowledge of any defendant being served. In fact, any service was not brought about until months later after the motion for remand was made untimely. And that's the basis of the district court refusing to remand this. The plaintiff untimely filed a motion to remand to preserve the issues of unanimity, whether there was a statement of all defendants being served or not served. They waived that under case law and the rule 1442C. Counsel, did you object on the grounds that it was late? Yes, Your Honor. Absolutely. We said that it was late, and we reiterated it in our brief. No, did you object at the time to the district court? Yes, Your Honor. Okay. Where is that in the record? Your Honor, I cannot, I would have to get the cite for the court later, but we did object. And in fact, all of the defendants that were remaining litigated it and had no problem and consented to being in district court. Where we remain, including the Nevada Department of Transportation, which litigated this all through federal court, and in fact settled it and is no longer a party. And Royal Express, who consented. In fact, in their briefs before the court, say that jurisdiction is proper. In regard to the defaults, it is clear that under Nevada law and the district courts, the federal district courts have interpreted, you can make your initial appearance by filing a demand for security. And if the demand for security is not posted or correctly posted, timely, you can file a motion to dismiss pursuant to 18.130. And that's exactly what we did and that's exactly what Royal Express did. We've had the motions to dismiss pending before the court. And what created a rather torturous time in the district court was the fact that we had motions to dismiss on file and we had these defaults. pending, which the court correctly set aside, which compounded what was happening because the plaintiffs weren't serving any pleadings on the parties that they claimed had been defaulted. And it led to a rather large amount of confusion before this was finally settled by the district court judge and started all over again with discovery and a new scheduling order. And the court was absolutely right to set these aside. The parties had made an appearance and the plaintiff knew that and still, contrary to the rule, entered a default. It was a fugitive document, should not have been done, and that's what the district court found and that was a correct ruling. In regard to the motion for summary judgment, I've already hit it. I don't want to take any more time, but it's clear from both the plaintiff, the risk manager at the plaintiff's company, Royal Express, and the plaintiff's own expert, they had no evidence that this load ever shifted causing this accident. Absolutely none. It was just pure speculation in regard to plaintiff's counsel's argument for the district court and before this court. And I'll let my other counsel use up the rest of the time. Thank you. Good morning. Your Honor, may I please the Court? My name is Michael Federico. I represent IBP on the issue of indemnity. It's our position that the district court granted our motion for summary judgment and that was an appropriate move based upon an appropriate interpretation of the contract. And in addition, the contract regarding indemnity and actually the clause itself was not ambiguous. As to the clause itself, we know that it was triggered. It was triggered based upon conduct of Royal Express through Royal's employee, that being the plaintiff himself. And we know based upon that crash, that one car crash, that Royal actually paid on the cargo. Then they changed their mind when it came down to the fees and costs of the ongoing litigation with the plaintiff. Royal's Express has the opinion that the exception to this clause applies because there was alleged negligence against my client, IBP. However, in nowhere in this section of the indemnity clause does it talk about alleged negligence. In other words, it does refer to alleged up where the damages are discussed. It says actual or alleged about halfway through it. But then down around the exception, there is no references to alleged. If alleged negligence is all they would take to trigger the exception, it would have simply said so. And if, in fact, it did say so, it's our position that the exception would have swallowed the actual clause for indemnity. As far as the ambiguity argument, aside from the fact that the first time they raised it is on appeal, if you look at their briefs on excerpts of record 516 and 517, Royal Express's predecessor counsel argued to the district court that the language is, quote, clear and unambiguous, and they'd like to uphold the plain language. And just as they argued at the district court, now they apparently have changed their position. In summary, pursuant to the Nebraska law, in the Woodman case, you're supposed to look to the language of an indemnity contract, the situation of the parties, and the circumstances. The simple circumstances are this. We have IBP, a meat processing plant, who did not want to assume the risk of taking hanging beef and taking it across country. Royal Express to do that. In exchange, Royal was to assume any liabilities for accidents such as this one. Royal Express was to get their million-dollar insurance policy. Pursuant to the contract, we're supposed to look to the contract. That's what they were supposed to do. As far as IBP is concerned, they should be getting the benefit of the bargain, and it's our position that summary judgment should be affirmed on appeal. If there's any questions, I know I'm on short time, because Royal has to have his time, too. So.  Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Christopher Lozano appearing on behalf of Royal Express and also DEF Express, Incorporated. Very briefly, with respect to the removal issue, just to clarify any ambiguity, on that issue, Royal and DEF, for that matter, stands four-square, shoulder-to-shoulder with IBP. The removal was proper. Royal has always submitted itself to the jurisdiction and the authority of the Federal courts. In fact, the first act upon learning of the removal was a predecessor counsel attempting to file a 12b-6 motion. Unfortunately, it apparently was filed in State court for reasons that are not entirely clear. But clearly, the intent, the expressed attempt there was to avail itself of the authority of the Federal court. With respect to the issue of the workers' compensation exclusive remedy doctrine, that has been briefed, I think, very thoroughly in the moving papers. The only point that I would add was that in the Powell's reply, they state that the case of CNA v. Workers' Compensation Appeals Board stands for the proposition that California's exclusive remedy doctrine only applies to California forums. And they state that Royal does not address that in any of the moving papers. It's not exactly correct. That case is referenced in Royal's papers. That case is a Jones Act, Dock Workers, Longshoremen's Compensation Act case. The distinction that the California court was drawing in that case was between the California workers' compensation scheme and the Federal compensation scheme with respect to the Jones Act and the Longshoremen's Dock Workers' Compensation Act. So the court was not saying that only California courts are subject to that exclusive remedy provision. It was saying that in this type of situation where you have an individual who is working on board a ship who might avail themselves of both the California and the State compensation schemes, they may do so. And it is not exclusive in that context. They did not address the issue of whether in another sister State that exclusive remedy doctrine would not apply. It, of course, would because to do otherwise would undermine one of the fundamental tenets of workers' compensation. Royal would like to focus principally on the issue of the indemnity clause, the indemnity clause of the contract between Royal and IBP. There is no dispute between Royal and between IBP regarding the application of Nebraska law to the interpretation of contracts. There, frankly, is no dispute as to what the standards are. The dispute here is over the language itself. What does the language of the actual contract, the indemnity clause, and the exception thereto, what does that language mean? And as pointed out in the moving papers, the language is quite clear. It is quite obvious what was being used based upon the reasonable definitions, the reasonable interpretations of the language. First of all, the fact that there is an exception that contemplates liability that is attributable solely to IBP raises the inference that the main clause to which the exception would apply must then refer to something else, and that something else necessarily is vicarious liability. That's the main distinction and the main difference of opinion between IBP and Royal in this regard. So if the exception relates to sole negligence, then the clause itself must relate to vicarious liability. The language of the clause's exception is also demonstrative in this regard. It says attributable to the negligence of IBP. It doesn't say proven. It does not say established negligence. It doesn't say demonstrated, conclusive, evinced, anything like that. And this is the point of difference between IBP and Royal regarding whether it must be proven sole negligence or merely alleged sole negligence that triggers the exception to the exclusion, excuse me, the exception to the indemnification. As is pointed out in the moving papers, attributable means ascribed. It does not mean established. That is why the word established or demonstrated or proven is not used. Ascribed means imputed, to assign, to theorize. Therefore, it need not be proven in order for the exception to come into play. Moreover, the exclusion refers to claims, actions, and suits. It doesn't refer to verdicts, findings, or judgments. Again, from the very language of the exception, it appears that there is the mere possibility, the mere accusation, is sufficient to trigger that exception. Now, the district court has to make sure I understand. I want to make sure I understand your question. Yes, Your Honor. So you're saying then that when, that Royal was to indemnify IBP for all liabilities, obligations, losses, damages, penalties, claims, actions, suit, costs, charges, and expenses, including without limitation fees and expenses of legal counsel and expert witnesses, that that is subject to the exception, which says unless such things are attributable to the negligence of IBP. Yes, Your Honor. Attributable, not proven, but if the sole, and that, that would be. So you're saying there's just an, you mean if you get sued together that, and you mean if we just name IBP as a possible defendant here without any basis for it, that that triggers the exception and Royal doesn't have to indemnify IBP? No, Your Honor. It's whether the sole, where the allegations in the complaints, as was the case in this matter, solely claim that it is the sole negligence of IBP that caused the accident which caused the injury. That was what the Powells claimed. In their complaint against IBP, all they said was the reason that IBP is liable to whatever degree, to whatever form, to the Powells is because of IBP's loading of the beef, period. They didn't say, and is vicariously liable for the following actions of Royal. So in that instance, in the very instance that the. But the liabilities don't appear to be attributable to the negligence of IBP. That's the district court's. The district court's finding is there's no evidence that IBP was negligent here. And that's why he grants summary judgment. And proof is not required. But the charging allegations were that the sole negligence of IBP was the reason why IBP was liable. In other words. Right. The only theory is because you failed, IBP failed. Right. And the district court finds there's no evidence to support that. But again, Your Honor, the lack of evidence would only be meaningful if it, if proof were necessary for the exception to be triggered. And as the language indicates, proof is not required. It is merely allegations that are sufficient. The word attributable itself is a very strong indication that allegations are sufficient. And it makes sense. Because the indemnity clause itself is designed for IBP to be indemnified for those expenditures that it makes when it's sued on a theory of vicarious liability. And that is reasonable. The exception makes sense, though, because it would be unfair, frankly, for Royal or any carrier to what is essentially a contract of adhesion, which appears to be drafted by IBP, to be required to indemnify IBP not only for its vicarious liability from the carrier, but also for its sole liability. And understanding that the district court has construed this to be essentially a contract of insurance, that is the problem here. Because in doing so, the district court has essentially inserted the term proven into the sole negligence exception and has determined that it has to be construed in that way. And that simply is not what the reasonable objective language of this clause and of the exception would indicate. Okay. Could you enlighten me? I'm a little confused as to the relationship between DEF and Royal. One of them owned the truck and one of them owned the trailer, and is that right? It's my understanding, Your Honor, that the DEF owned the truck or the trailer. I'm not specifically sure, but there are apparently advantageous reasons, whether it's taxation, I don't know exactly, but for incorporating certain aspects of trucking companies in Oklahoma. But the employer of the Powell, of Mr. Powell, was Royal Express. It was not DEF. So they were essentially sister corporations. It's my further understanding that DEF is, in fact, no longer a going concern even. It no longer owns anything at this point. But it did own at least the trailer, as I understand it. And it may have owned the tractor as well. The only – the final point that I would like to raise is there is a relatively recent Nebraska State court opinion that I would invite the Court's attention to, because it does – it does raise the issue of what the scope of indemnity clause is and how it is to be read. And that is the case of – let's see. It's actually an Eighth Circuit court decision. Merriman v. IBP, as a matter of fact. And that is 978F2nd443. That was, unfortunately, not included in the briefing. 978F2nd? Or 278F2nd? That's quite a while ago. I beg your pardon, Your Honor. It says 978F2nd443. Yes. It's still quite a while ago. Yeah, that's not recent. Correct. But it was not included, apparently, in the briefing. Okay. You have more than used your time. Yes. Thank you, Your Honor. I appreciate the Court's time. We'll give you a couple minutes. Thank you. I'll be very brief. Mr. Olson stated on the spoliation issues that the items destroyed belong to Royal Express. That's incorrect. The items destroyed belong to DEF. And DEF is the one who ordered that they be destroyed. Second, he argued that there's no evidence that the load shifted, and we disagree with that. These are questions of fact. Mr. McCurdy is an independent eyewitness. He saw the truck jerk. Our expert, Bill Morrison, said that when you have hanging beef, it shifts the center of gravity of a truck, and it is his expert opinion as an accident reconstructionist that the load shifted. Further, Stephen Powell, once he awoke from his coma, the first statement he made was that the load shifted also. So we do have evidence. The best evidence was destroyed. Next, Mr. Olson said that he was not aware of any other parties being served prior to him. Two parties had been served prior to him, NDOT and Royal Express. He said our removal petition for remand was untimely. Not only do we disagree with that, we believe that there is no limit on subject matter jurisdiction. And since there's no subject matter jurisdiction, the timing is irrelevant. He also said that everyone else consented and there was no problem. He can't just say that. There's no evidence of that. Royal Express filed a motion in state court and said we're not going to acknowledge that. Stood before Judge Tagliati in the Nevada District Court and state court and said it's defective for all of these reasons, and we didn't consent, and so you have to keep us in state court. And Nevada Department of Transportation did not consent. And playing in federal court at a later date does not make consent on the date of removal. And then Royal Express and DEF stand shoulder to shoulder with IVP on the removal issue. But they had the same counsel at the time of removal and the counsel for Royal Express adamantly opposed removal. So that's a new development. Are there any questions? Thank you. Any questions? No. Thank you. No, thank you. The case just argued is submitted for decision. That concludes the court's calendar for this morning, and the court stands adjourned. All rise.
judges: Schroeder, Hall, Bybee